IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

VICTORIA BONSLATER                                                                                      PLAINTIFF

VS.                              CASE NO. 3:10CV00286 HDY

MICHAEL J. ASTRUE, Commissioner,
   Social Security Administration                                                              DEFENDANT

## ORDER

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for supplemental security income (SSI). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id*. The Court may not reverse merely because evidence would have supported a contrary outcome. *See id*.

The only disputed issue in this case is whether plaintiff is disabled within the meaning of the Social Security Act. Plaintiff bears the burden of establishing a physical or mental impairment that will result in death, or that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff filed for SSI on February 20, 2008. Her application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ).

Plaintiff was 35 years old at the time of the hearing, which was conducted on August 13, 2009. (Tr. 23-54). The plaintiff, who has an tenth grade education, testified at the hearing. A witness also appeared and testified on the plaintiff's behalf. The plaintiff testified that she had worked as a babysitter for three children in the past. (Tr. 33). She stated she also worked as a cashier. (Tr. 35). The plaintiff stated that her two children assisted her when she had the babysitting job. (Tr. 39). The plaintiff indicated she could not work due to epilepsy, a slipped disc, a pinched nerve, and problems with her spine that affect her left side. (Tr. 41). She testified to limited daily activities, and that her children do the daily chores around her house. She stated that "sometimes" she could tend to dressing and bathing herself and taking care of her personal needs. (Tr. 44). She indicated that she could do some chores on her better days, but that her worse days outnumber the better days. She stated she could not perform a light duty job because back pain prevented her from sitting, standing, or even lying down. (Tr. 45). She also stated she could not hold her arms over her head and that she could not control her bladder. (Tr. 46). According to the plaintiff, her sole activity outside the house is to attend church. In addition, she stated that her church provided housing for the plaintiff and her children. (Tr. 47). The leader of the women in her church testified as a witness for the plaintiff. The witness corroborated the plaintiff's testimony that the children performed the cleaning in the house, and that the plaintiff's daily activities were limited. (Tr. 48-9).

On December 21, 2009, the ALJ found the plaintiff was not disabled as defined in the Social Security Act. (Tr. 10-17). The ALJ specifically found the medical evidence established the plaintiff

has the following severe impairments: seizure disorder, migraine headaches, cervical and thoracic degenerative disc disease status post C5-6 diskectomy and fusion. The ALJ found the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found the plaintiff has the residual functional capacity to perform light work except that she must observe usual seizure precautions, she cannot climb ladders, ropes or scaffolds, she can balance and climb ramps/stairs no more than occasionally, and she must avoid even moderate exposure to hazards, machinery, heights, etc. The ALJ concluded the plaintiff was capable of performing her past relevant work as a cashier. Thus, the ALJ found the plaintiff was not disabled. The Appeals Council, on October 29, 2010, denied plaintiff's request for review (Tr. 1-3), and plaintiff subsequently filed suit with this Court. The ALJ considered her impairments by way of the familiar five-step sequential evaluation process.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id.*, § 404.1520©); *see* 20 C.F.R. § 404.1526. If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional

capacity, despite the impairment(s), to perform past work. *Id.*, § 404.1520(e). If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

In support of her request for reversal, plaintiff asserts that the ALJ's erred by: (1) disregarding the opinion of a treating physician that the plaintiff was disabled; and (2) finding that plaintiff was capable of performing light work. *Plaintiff's brief at 28-31*.

The plaintiff's first claim for relief is that the ALJ fail to give proper credit to treating physician Dr. Joseph Patterson's opinion that the plaintiff could not work. In June of 2009, Dr. Patterson wrote to the Arkansas Department of Workforce Services, that the plaintiff "has a number of medical problems which may prevent her from participating and cooperating with the works activity program you are espousing." (Tr. 981). Dr. Patterson recited the plaintiff's history with Bell's Palsy, epilepsy, and chronic neck pain. These impairments resulted in her being "presently under the care of a neurologist." (Tr. 981). Dr. Patterson further noted the plaintiff had been diagnosed with irritable bowel syndrome and had "been followed in the past for depression." (Tr. 981).

We find no merit in the first argument of the plaintiff. The timing, the precise wording of the letter from Patterson, and the history of treatment by Patterson are factors in our ruling. Plaintiff had back surgery on February 26, 2009. Dr. Campbell, the neurologist who performed the surgery, wrote a "disability certificate" indicating that the plaintiff was totally incapacitated from February 16, through May 16, 2009, due to the surgery. (Tr. 1011). Plaintiff was seen by Dr. Patterson for

4

a physical on April 17, 2009, in the midst of her recovery period from the surgery. (Tr. 977). This appears to be the only time she was seen by Dr. Patterson. Based upon the timing of her examination with Patterson, it is not surprising that he wrote the wrote the letter to the Arkansas Department of Workforce Services[1]. The precise wording of the letter is noteworthy. Although the plaintiff casts the letter as a statement that she is disabled, a closer examination finds that Dr. Patterson stated she was unable to participate in a particular "works activity program" then being offered. The letter does not indicate that Patterson had diagnosed and treated the plaintiff for her impairments. Rather, Patterson noted a history of depression and current treatment by another physician, a neurologist, for her problems. In addition, the letter of Dr. Patterson is silent as to the length of time that the plaintiff would be unable to participate in the program. In short, the letter does not state the plaintiff is disabled as defined by the Social Security Act. Finally, we note that Dr. Patterson saw the plaintiff only once. While this may technically qualify him to be a treating physician, this lack of familiarity certainly influences the weight to be accorded the letter penned by Dr. Patterson. In addition to the factors relating to the letter itself, the ALJ did not totally disregard Dr. Patterson's letter. The ALJ's opinion devotes three paragraphs to this subject. (Tr. 14-15). In summary, we find no error in the ALJ's treatment of the letter submitted by Dr. Patterson.

The plaintiff next contends the ALJ erred by finding that plaintiff was capable of performing light work with seizure precautions. The ALJ found the plaintiff's testimony was not fully credible "based upon her well documented history of noncompliance with treatment; suboptimal effort on psychological evaluation as described by Dr. Dunn; and angry, irrational behavior as documented

---

[1] On June 5, 2009, the plaintiff was seen by Dr. Campbell, who noted her "wound is well healed," she "has good range of motion" and "good strength in the upper extremities" and that he would see her again "as needed." (Tr. 1014).

by hospital personnel in March 2008." (Tr. 16). The ALJ also pointed out that the plaintiff was noncompliant in taking her anti-seizure medications. In addition, the ALJ cites treating neurologist Campbell as indicating the plaintiff was doing well a few months following back surgery. Finally, the ALJ adds that "no treating or examining mental health professional has reported any specific limitations." (Tr. 17). The plaintiff counters that her testimony and the testimony of her witness demonstrates impairments (e.g., weakness in her left side) which would prevent her from standing and or walking the requisite time necessary for a light job. The flaw with this argument is that the ALJ assessed the credibility of the plaintiff and her witness and discounted their testimony. We find no error in the ALJ's credibility evaluations. In particular, the plaintiff's history of noncompliance with taking medications is damaging to her credibility. The plaintiff also cites her frequent hospitalizations and her mental disorders as reasons why she could not perform light work. However, the ALJ adequately addressed the mental impairments[2] of the plaintiff and we find substantial evidence supports the ALJ's conclusion that the plaintiff was capable of performing light work with seizure precautions.

We find no merit in the arguments advanced by the plaintiff.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this __26__ day of September, 2011.

                                                          UNITED STATES MAGISTRATE JUDGE

---

[2] The ALJ noted the plaintiff's lack of follow up treatment for mental impairments, and the situational nature of her depression. (Tr. 14-15, 17).